DAVID J. LUJAN
LUJAN & WOLFF LLP
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone: (671) 477-8064/5
Facsimile: (671) 477-5297 (LAWS)

*Attorney for Plaintiff*
*Morgan Wade Paul*

FILED
DISTRICT COURT OF GUAM
FEB 27 2017
JEANNE G. QUINATA
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF GUAM

MORGAN WADE PAUL,

    Plaintiff,

v.

ROMAN CATHOLIC ARCHBISHOP OF AGANA, a Corporation sole;
LOUIS BROUILLARD, an individual; DOE ENTITIES 1-5; and DOE-INDIVIDUALS 6-50, inclusive

    Defendants.

CIVIL ACTION NO. 17-00026

VERIFIED COMPLAINT FOR DAMAGES FOR

1. Child Sexual Abuse
2. Negligence
3. Negligent Supervision
4. Negligent Hiring and Retention
5. Breach of Fiduciary Duty / Confidential Relationship

**JURY TRIAL DEMANDED**

Plaintiff MORGAN WADE PAUL ("Wade") files this Complaint for damages based on prior sexual abuse (the "Complaint") against Defendants Archbishop of Agana, a corporation sole, Louis Brouillard, an individual, and DOES 1-50 ("Defendants").

I.
**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because all parties are citizens of diverse states and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

2. This Court has personal jurisdiction over this matter because Defendants purposefully availed themselves to the benefit of the laws of this judicial district by regularly transacting and/or conducting business in this state.

3. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and or a substantial part of property that is the subject of the action is situated.

## II.
## PARTIES

4. At all times relevant hereto, Wade has been an individual who resided in Mongmong, Guam, and presently resides in Virginia. Wade is currently 53-years old.

5. At all times relevant hereto, and upon information and belief, Roman Catholic Archbishop of Agana, a corporation sole, in accordance with the discipline and government of the Roman Catholic Church, is the legal name for Defendant Archbishop of Agana, also known as Archdiocese of Agana. ("Agana Archdiocese"), which is and has been at all times relevant hereto a non-profit corporation organized and existing under the laws of Guam, authorized to conduct business and conducting business in Guam, with its principal place of business in Guam. The Agana Archdiocese is an entity under the control of the Holy See, based in Vatican City, Rome, Italy, and as such constitutes a citizen of a foreign country for purposes of diversity jurisdiction. Agana Archdiocese is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

6. At all times relevant hereto, Defendant Louis Brouillard ("Brouillard"), an individual and an agent of the Agana Archdiocese, was a member of the clergy of the Agana Archdiocese, and a Catholic priest working for the Agana Archdiocese. Brouillard was ordained as a Catholic Priest on December 17, 1948 in Guam where he worked in parishes and schools in 1981. At all times relevant hereto, Defendant Brouillard was a resident of Guam and is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein. Defendant Brouillard currently resides in the mainland United States.

7. Defendant-entities named herein as DOES 1 - 5, inclusive, are or at all times relevant hereto, were insurance companies that provided general liability coverage and / or excess level liability coverage pursuant to policies issued to the Agana Archdiocese and / or Roman Catholic Church of Guam. Defendant-individuals named here-in as DOES 6-50, inclusive, are at all times relevant hereto, were agents, employees, representatives and / or affiliated entities of the Agana Archdiocese and /or Roman Catholic Church outside of Guam whose true names and capacities are unknown to Wade who therefore sues such defendants by such

2

fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained. DOES 6 -50 assisted, aided and abetted and / or conspired with Brouillard and / or other members of the Agana Archdiocese to conceal, disguise, cover up, and / or promote the wrongful acts complained of herein. As such, each such Doe is legally responsible in some manner for the events, happenings, and / or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

8. Each defendant is the agent, servant and/or employee of other defendants, and each defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.

## III.
## INTRODUCTORY ALLEGATIONS

9. In our about 1974, when Wade was around the age of eleven (11), Wade became an altar boy at the Mongmong Parish of Nuestra Senor De Las Aguas. As an altar boy, Wade was required by the Agana Archdiocese to join and did also become a member of the Boy Scout in Boy Scout Troop 18 (Mongmong).

10. Wade met Father Louis Brouillard, who was a priest at the San Isidro Church at Malojloj (Malojloj Parish) in or about 1975. At the time, Wade was proud to be an altar boy and a boy scout and very motivated to earn his swimming and lifesaving merit badges.

11. During this time, Brouillard served as a Scout Master in the Guam chapter of the Boy Scouts, who would sometimes use weekly outings to recruit young boys to become altar boys or join the Boy Scouts.

12. During these weekly outings, Brouillard would pick up between four (4) to six (6) boys, some from the Mongmong Parish, including Wade, in his truck and drive them to Lonfit River in Ordot, Guam. In order to access the River, Brouillard led Wade and the other boys on a 20-minute hike. Once they arrived, all of the boys who had previously swum with Brouillard got completely undressed. The first time that Wade went swimming to earn his swimming merit badge, he did not strip naked, even though Brouillard had

stated bluntly to Wade and the other children that "you get naked or you get nothing at 'Snow White.'"[1] After one to one and a half (1-1.5) hours of swimming, Brouillard drove Wade and the other children to Snow White. When everyone else was eating Brouillard told Wade that there was "nothing for you."

13. After that first incident Wade felt like an outcast and feared that he might not earn his merit badges if he did not cooperate with Brouillard, so Wade felt pressured to swim naked thereafter.

14. On numerous occasions, while swimming, Brouillard sexually molested and abused the boys. Brouillard would swim completely naked and routinely instructed Wade and the other boys to remove their clothes, and Brouillard would grope and fondle their private parts.

15. In order to earn the swimming merit badge Brouillard required Wade to float and tread water for 15 minutes. Brouillard would take Wade to float in the deep side of Lonfit, and hold him. As Wade floated Brouillard would grope at Wade's private parts and fondle him. Wade kept pushing Brouillard's hand away and tried to resist but Brouillard kept grabbing at Wade. Wade felt helpless, confused, and upset. As an 11-12-year-old child, Wade was confused and conflicted because he just wanted to earn his merit badge.

16. After enduring Brouillard's abuse twice a week for 3-4 weeks, Wade received his swimming merit badge. Once Wade received his badge, he never went on another outing with Brouillard. In order to earn the lifesaving merit badge, Wade would have had to endure more sexual abuse and outings with Brouillard. Wade refused to endure further abuse and mistreatment and didn't pursue that merit badge.

17. On information and belief, other priests and representatives of the Agana Archdiocese, including Bishop Apollinaris Baumgartner and individuals named herein as Doe defendants, were aware of the sexual abuse committed by Brouillard and deliberately remained quiet and withheld such information from third parties including victim's parents or guardians and law enforcements authorities, in order to protect Brouillard and the Agana Archdiocese, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

18. On or about October 03, 2016, Brouillard released a signed statement admitting to sexually abusing at least twenty (20) boys, a true and accurate copy of Brouillard's statement is attached hereto as

---

[1] "Snow White" was an eating establishment located in Anigua, Guam.

Case 1:17-cv-00026   Document 1   Filed 02/27/17   Page 4 of 16

4

Exhibit "1". While the statement contains admissions, it also contains remarks that seek to minimize the misconduct as reflected in the excerpts below:

   a. "My name is Father Louis Brouillard. I am a retired Roman Catholic priest. ... I served the diocese of Guam in the 1940s through 1970s and held many positions in the church."

   b. "Looking back now, I realize that I crossed the line with some of my actions and relationship with the boys.

   c. "During some of the sex education talks, while at Santa Teresita, I did touch the penises of some of the boys and some of the boys did perform oral sex on me. Some of the incidents took place in Mangilao at the rectory of the Santa Teresita Church. Because of the many years that have passed, I do not remember the exact dates and times or the names of the boys involved. There may have been 20 or more boys involved. Other locations where the sexual contact may have happened would be at San Vicente and Father Duenas Memorial Schools.

   d. "At that time, I did believe that the boys enjoyed the sexual contact and I also had self gratification as well."

   e. "I have come to learn the name of one of the boys I had sexual contact with at the Santa Teresita rectory. His name is Leo Tudela. ... I apologize to you Leo and the rest of the boys that I may have harmed. I regret with all my heart any wrong I did to them. I pray for all the boys I may have harmed and ask for their forgiveness from God."

   f. "While in Guam my actions were discussed and confessed to area priests as well as Bishop Apollinaris Baumgartner who had approached me to talk about the situation. I was told to try to do better and say prayers as a penance."

   g. "I believe the Catholic Church should be honest and truthful regarding what happened on Guam during my time there."

19. At all times relevant hereto, Brouillard sexually abused and molested Wade when Wade was a minor and committed such acts while serving as a priest in the Malojloj Parish, in both of his capacities as an agent and employee of the Agana Archdiocese, which is vicariously liable for his actions.

20. The Agana Archdiocese and DOES 1-50, inclusive, knew that Brouillard had sexually abused and molested Wade, and rather than reporting the matter to law enforcement and without intervening so as to prevent Brouillard from engaging in additional instances of sexual abuse, and without seeking to have Brouillard acknowledge and take responsibility for his wrongful actions, they assisted Brouillard with the specific purpose or design to keep Brouillard's misconduct hidden and secret; to hinder or prevent Brouillard's apprehension and prosecution; and to protect the Agana Archdiocese, as well as the Roman

Catholic church as an international institution. Such tactics included paying Brouillard a monthly stipend for many years up until this time, despite being rendered inactive as a priest.

21. To this day, the Agana Archdiocese and DOES 1-50 never contacted Wade, Wade's family, or children they know Brouillard had sexual contact with. The Agana Archdiocese and DOES 1-50 have been content that any other children that were sexually abused by Brouillard while he was serving as a priest, will remain affected by guilt, shame and emotional distress.

22. Despite the prolonged and egregious sexual abuse, spanning a period of several decades, neither the Agana Archdiocese nor the Roman Catholic Church ever formally disciplined Brouillard and in fact have paid and continued to pay up through present time, sums of money to Brouillard on a regular basis, ostensibly under the guise of a retirement stipend. Brouillard's name was included on a list released by the Duluth diocese in December 2013 of priests who had been credibly accused of sexual abuse of young persons while serving in the diocese.

23. The criminal offense of Child Abuse is defined in 9 GCA § 31.30, which states in pertinent part as follows:
> (a) A person is guilty of child abuse when:
>   (1) he subjects a child to cruel mistreatment; or
>   (2) having a child in his care or custody or under his control, he:
>       * * *
>       (B) subjects that child to cruel mistreatment; or
>       (C) unreasonably causes or permits the physical or, emotional health of that child to be endangered

24. Under 19 GCA § 13101, the following relevant definitions are provided:

> * * *
> (b) Abused or neglected child means a child whose physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of the person(s) responsible for the child's welfare;
> * * *
> (d) Child means a person under the age of 18 years;
> * * *
> (t) Harm to a child's physical health or welfare occurs in a case where there exists evidence of injury, including but not limited to:
> * * *
>   (2) Any case where the child has been the victim of a sexual offense as defined in the Criminal and Correctional Code; or
>   (3) Any case where there exists injury to the psychological capacity of a child such as failure to thrive, extreme mental distress, or gross emotional or verbal degradation as is evidenced by an observable and substantial impairment in the child's ability to function within a normal range of performance with due regard to the child's culture(.)

25. Under 9 GCA § 25A201, "sexual conduct" with a minor is defined as follows:

(o) Sexual Conduct means acts of sexual penetration, sexual contact, masturbation, bestiality, sexual penetration, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or pubic area of a minor.

26. Under 9 GCA § 25.10(8), "sexual contact" is defined as follows:

(8) Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

27. Under 9 GCA § 25.20, the crime of Second Degree Criminal Sexual Misconduct with regard to a child is set forth in pertinent part as follows:

(a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
    (1) that other person is under fourteen (14) years of age;

28. Under 9 GCA § 28.65, the crime of Indecent Exposure is set forth in pertinent part as follows:

A person is guilty of indecent exposure if he exposes his genitals or performs any other lewd act under circumstances in which his conduct is likely to be observed by any person who would be offended or alarmed.

29. Under 19 GCA § 13201(b), the following are required to report child abuse:

(b) Persons required to report suspected child abuse under Subsection (a) include, but are not limited to, ... clergy member of any religious faith, or other similar functionary or employee of any church, place of worship, or other religious organization whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, ...

## IV.
## FIRST CAUSE OF ACTION

### Child Sexual Abuse
### [Against Defendant Brouillard]

30. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. Brouillard committed the offense of Second Degree Criminal Sexual Misconduct, as set forth in 9 GCA § 25.20, by engaging in sexual contact with Wade when Wade was under fourteen (14) years of age.

32. Brouillard committed the offense of Indecent Exposure, as set forth in 9 GCA §§ 28.65, when he exposed his genitals in the presence of Wade in which his conduct offended and alarmed Wade.

33. Brouillard committed the offense of Child Abuse, as set forth in 9 GCA § 31.30 by subjecting Wade to cruel mistreatment, including but not limited to having Wade, who was a child at the time pursuant to 19 GCA § 13101(d), under his care, custody or control, unreasonably caused or permitted the physical or emotional health of the child to be endangered.

34. As a direct and proximate consequence of Brouillard's misconduct, Wade was an abused or neglected child within the meaning of 19 GCA § 13101(b) because his physical or mental health or welfare was and continues to be harmed by the acts or omissions of Brouillard, who was responsible for the child's welfare. Moreover, as Brouillard's misconduct constitutes the commission of one or more criminal offenses, Wade has suffered harm to a child's physical health or welfare within the meaning of 19 GCA § 13101(t)(2) because Wade was the victim of a sexual offense as defined in the Criminal and Correctional Code (9 GCA).

35. As a direct and proximate consequence of Brouillard's misconduct, Wade has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

36. By engaging in the conduct described herein, Brouillard acted with malice, oppression, and/or fraud, entitling Wade to exemplary and punitive damages.

## V.
## SECOND CAUSE OF ACTION

### Child Sexual Abuse
### [Against Defendants Agana Archdiocese and DOES 1 – 50]

37. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) are vicariously liable for the sexual abuse committed upon Wade by Brouillard. Public policy dictates that Defendants should be held responsible for Brouillard's wrongful conduct under the theory commonly referred to as Respondeat Superior.

39. For the reasons set forth in the incorporated paragraphs of this Complaint, the sexual abuse of Wade arose from and was incidental to Brouillard's employment with the Agana Archdiocese, and while Brouillard, was acting within the scope of his employment with the Agana Archdiocese at the time he committed the acts of sexual abuse, which were foreseeable to Defendants.

40. Defendants ratified and / or approved of Brouillard's sexual abuse by failing to adequately investigate, discharge, discipline and / or supervise Brouillard and other priests known by Defendants to have sexually abused children, or to have been accused of sexually abusing children; by concealing evidence of Brouillard's sexual abuse; failing to intervene to prevent ongoing and / or further sexual abuse; by failing to report the sexual abuse as required under 19 GCA 13201(b); by allowing Brouillard to continue in service as a Catholic priest working for the Agana Archdiocese.

41. Despite the pretense of policies and procedures to investigate and address instances of child sexual abuse by priests, Defendants in fact implemented such policies and procedures for no other purpose than to avoid scandal, maintain secrecy and preserve loyalty to fellow clergy, including child molesting clergy, rather than the protection of children. Such hypocritical conduct by Defendants has served to systematically encourage, perpetuate and promote sexually abusive conduct by priests in the Agana Archdiocese.

42. Likewise, Defendants either had actual knowledge of Brouillard's sexual abuse of numerous other minors whom Brouillard victimized, or could have and should have reasonably foreseen that Brouillard was committing and would commit sexual abuse of other minors. Such knowledge included direct awareness by former Agana Bishop Apollinaris Baumgartner, as reflected in the following excerpt from Brouillard's statement attached hereto as Exhibit 1:

> "While in Guam my actions were discussed and confessed to area priests as well as Bishop Apollinaris Baumgartner who had approached me to talk about the situation. I was told to try to do better and say prayers as a penance."

43. As a direct and proximate result of the Defendants' above – described conduct, Wade has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of

enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

44. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Wade to exemplary and punitive damages.

## VI.
## THIRD CAUSE OF ACTION

### Negligence
### [Against All Defendants]

45. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Defendants Brouillard, Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to protect Wade when he was entrusted to Brouillard's care by Wade's parents. Wade's care, welfare, and / or physical custody were temporarily entrusted to Defendants, and Defendants accepted the entrusted care of Wade. As such, Defendants owed Wade, as a child at the time, a special duty of care, in addition to a duty of ordinary care, and owed Wade the higher duty of care that adults dealing with children owe to protect them from harm.

47. By virtue of his unique authority and position as a Roman Catholic priest, Brouillard was able to identify vulnerable victims and their families upon which he could perform such sexual abuse; to manipulate his authority to procure compliance with his sexual demands from his victims; to induce the victims to continue to allow the abuse; and to coerce them not to report it to any other persons or authorities. As a priest, Brouillard had unique access to a position of authority within Roman Catholic families like the family of Wade. Such access, authority and reverence was known to the Defendants and encouraged by them.

48. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Brouillard's sexually abusive and exploitative propensities and / or that Brouillard was an unfit agent. It was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to Wade, the children entrusted to Defendants' care would be vulnerable to sexual abuse by Brouillard.

10

49. Defendants breached their duty of care to the minor Wade by allowing Brouillard to come into contact with Wade as a child without supervision; by failing to adequately supervise, or negligently retaining Brouillard whom they permitted and enabled to have access to Wade; by failing to properly investigate; by failing to inform or concealing from Wade's parents, guardians, or law enforcement officials that Brouillard was or may have been sexually abusing minors; by holding out Brouillard to Wade's parents or guardians, and to the community of Guam at large, as being in good standing and trustworthy as a person of stature and integrity. Defendants cloaked within the facade of normalcy Brouillard's contact with Wade and / or with other minors who were victims of Brouillard, and deliberately concealed and disguised the sexual abuse committed by Brouillard.

50. As a direct and proximate result of the Defendants' above – described conduct, Wade has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

51. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Wade to exemplary and punitive damages.

## VII.
## FOURTH CAUSE OF ACTION

**Negligent Supervision**
**[Against Defendants Agana Archdiocese and DOES 1 – 50]**

52. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to provide reasonable supervision of both Brouillard and minor child Wade; to use reasonable care in investigating Brouillard; and to provide adequate warning to Wade's family, and to families of other children who were entrusted to Brouillard, of Brouillard's sexually abusive and exploitative propensities and unfitness.

54. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Brouillard's sexually abusive and exploitative propensities and/or that Brouillard was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise Brouillard in his position of trust

and authority as a parish priest, where he was able to commit the wrongful acts against Wade alleged herein. Defendants failed to provide reasonable supervision of Brouillard, failed to use reasonable care in investigating Brouillard, and failed to provide adequate warning to Wade's family regarding Brouillard's sexually abusive and exploitative propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

55. As a direct and proximate result of the Defendants' above – described conduct, Wade has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

56. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Wade to exemplary and punitive damages.

## VIII.
## FIFTH CAUSE OF ACTION

### Negligent Hiring And Retention
### [Against Defendants Agana Archdiocese and DOES 1 - 50]

57. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty not to hire and / or retain Brouillard in light of his sexually abusive and exploitative propensities.

59. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Brouillard's sexually abusive and exploitative propensities and / or that Brouillard was an unfit agent. Despite such knowledge and / or an opportunity to learn of Brouillard's misconduct, Defendants negligently hired and retained Brouillard in his position of trust and authority as a parish priest, where he was able to commit the wrongful acts against Wade alleged herein. Defendants failed to properly evaluate Brouillard's application for employment by failing to conduct necessary screening; failed to properly evaluate Brouillard's conduct and performance as an employee of Defendants; and failed to exercise the due diligence incumbent upon employers to investigate employee misconduct, or to take appropriate disciplinary

action, including immediate termination and reporting and referral of Brouillard's sexual abuse to appropriate authorities. Defendants negligently continued to retain Brouillard in service as a Catholic priest, working for Defendants, which enabled him to continue engaging in the sexually abusive and predatory behavior described herein.

60. As a direct and proximate result of the Defendants' above – described conduct, Wade has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

61. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Wade to exemplary and punitive damages.

## IX.
## SIXTH CAUSE OF ACTION

### Breach of Fiduciary Duty And / Or Confidential Relationship
### [Against All Defendants]

62. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. By holding Brouillard out as a qualified priest and a person of stature and integrity within the Catholic Archdiocese, Defendants Agana Archdiocese and DOES 1 - 50, together with Brouillard himself, invited, counseled, encouraged and induced the Catholic community of Guam, including parents or guardians of children, and particularly parents or guardians of children serving as altar boys and children eligible to serve as altar boys, to have trust and confidence in the Agana Archdiocese and its priests and to entrust their children to the company of priests and specifically to Brouillard, including allowing their children to be alone with Brouillard without supervision, and to spend nights at a church facility where Brouillard resided. Through such actions, Defendants collectively created and entered into a fiduciary and / or confidential relationship with its parishioners, including Catholic parents or guardians and their children, and in particular, children who provided services to the Agana Archdiocese that included serving as altar boys. Accordingly, Defendants collectively created and entered into a fiduciary and / or confidential relationship specifically with the minor child Wade.

64. Through such fiduciary and / or confidential relationship, Defendants collectively caused parents or guardians to entrust their children to priests, and specifically to Brouillard, including the parents of Wade, resulting in the subject acts of sexual abuse described herein.

65. Defendants collectively breached their fiduciary and / or confidential relationship with the minor child Wade by violating the trust and confidence placed in them by parishioners and specifically by the minor child Wade, and by engaging in the wrongful acts described in this Complaint.

66. As a direct and proximate result of the Defendants' above – described conduct, Wade has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

67. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Wade to exemplary and punitive damages.

## X.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Morgan Wade Paul requests judgment against all Defendants on all counts as follows:

1. For all general, special, exemplary and punitive damages, as allowed by law in a sum to be proven at trial and in an amount not less than $5,000,000;
2. For costs and fees incurred herein;
3. Attorneys' fees, as permitted by law; and
4. For other such and further relief as the Court may deem just and proper.

## XI.
## DEMAND FOR JURY TRIAL

Plaintiff Morgan Wade Paul, through his counsel, David J. Lujan, hereby demands a jury trial of six (6) in the above-entitled action, pursuant to Fed. R. Civ. Proc. 48(a).

Respectfully submitted this 23 day of February, 2017.

_____
DAVID J. LUJAN,
*Attorney for Plaintiff,*
*Morgan Wade Paul*

## VERIFICATION

MORGAN WADE PAUL, declares and states that he is the PLAINTIFF in the foregoing COMPLAINT; that he has read said VERIFIED COMPLAINT FOR DAMAGES and knows the contents thereof to be true and correct, except as to the matters which may have been stated upon his information and belief; and as to those matters, he believes them to be true.

I declare, under penalty of perjury, this __23d__ day of February, 2017, that the foregoing is true and correct to the best of my knowledge.

_____
MORGAN WADE PAUL